957 F.2d 333
 35 Fed. R. Evid. Serv. 99
 James M. WALLACE and James E. Wallace, Plaintiffs-Appellees,
v.
John MULHOLLAND, in his official and individual capacities,
and other unnamed City of Evanston, Illinois
employees and Michael Leon, Defendants-Appellants.
 Nos. 91-1037, 91-2401.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 28, 1991.
Decided Feb. 20, 1992.
Rehearing and Rehearing En Banc Denied March 30, 1992.
 
 Arvin Boddie, Chicago, Ill. (argued), for plaintiffs-appellees.
 Richard T. Ryan (argued), Mark F. Smolens, Flynn, Murphy & Ryan, Chicago, Ill., for defendants-appellants.
 Before CUMMINGS and CUDAHY, Circuit Judges, and WISDOM, Senior Circuit Judge.[1]
 WISDOM, Senior Circuit Judge.
 
 
 1
 The appellants, two police officers found liable for violating the civil rights of a young man and his father, challenge the district judge's behavior at trial, his legal decisions, and his award to the plaintiffs of attorney fees significantly greater than the damages awarded them by the jury. Because all of the district judge's decisions and actions were either legally correct or well within his discretion we AFFIRM the judgment below as to all questions on appeal.
 
 I. BACKGROUND
 
 2
 On March 4, 1988 Jacquelyn and James E. ("James") Wallace, the parents of James Michael ("Michael") Wallace, obtained from the Evanston (Illinois) Hospital a petition for the involuntary commitment of their son, a young man with a history of mental problems. Mr. and Mrs. Wallace immediately brought the petition to the Evanston police station. After requesting enforcement of the petition, they returned home, where they lived with their son.
 
 
 3
 Evanston police officers John Mulholland and Michael Leon were assigned the duty of enforcing the petition and committing the son to a mental hospital. They were given little, if any, specific information about the son's mental condition before reaching the Wallaces' house.
 
 
 4
 Precisely what happened at the Wallaces' house that day remains unclear. When the two men approached the Wallaces' kitchen, Michael--who weighed about 250 pounds--stood up and said he was not going to the hospital. The police officers ended up in a physical struggle with both father and son. Both Wallace men were treated for injuries sustained in that struggle. James Wallace was arrested for battery and obstructing a peace officer; criminal charges against him were later stricken on leave to reinstate.
 
 
 5
 The Wallaces sued Officers Mulholland and Leon and the City of Evanston under 42 U.S.C. § 1983 and Illinois state law. They alleged violations of their civil and constitutional rights and sought over $4 million in damages. Before trial the district court granted summary judgment in favor of the City of Evanston.
 
 
 6
 After four days of trial the jury decided in favor of James and Michael Wallace. Based on the use of excessive force against Michael Wallace it awarded him $1 in compensatory damages against both officers and $5,000 in punitive damages against each officer. Based on the unconstitutional seizure of James Wallace it awarded him $1,000 in compensatory damages and $10,000 in punitive damages against Mulholland alone. The court entered judgment on this verdict.[2] The court later awarded the plaintiffs reasonable attorney fees of $43,200 and costs of $2,912.65. The two officers together filed two separate appeals (now consolidated), raising the following issues:
 
 
 7
 A. The trial court's refusal to admit certain expert testimony;
 
 
 8
 B. The trial judge's biased behavior;C. The trial court's denial of their motion for a directed verdict; and
 
 
 9
 D. The trial court's award of attorney fees under 42 U.S.C. § 1988.
 
 A. Excluding Mental History Evidence
 
 10
 The pretrial order listed the defendant's intention to call a medical expert witness to discuss the son's mental condition. After several pretrial hearings, the judge granted the plaintiffs' motion in limine to prevent the defendants' use of that expert or of any other evidence regarding Michael's schizophrenia. The court found that evidence about the general nature of Michael's condition, and of the likelihood that someone with that condition will act aggressively, was probably irrelevant, and certainly prejudicial, to Michael's case. The subject of that case was Michael's actual behavior, and the way the police officers responded to it. The subject was not a psychiatric prediction about how someone like Michael might have behaved. Such evidence, together with evidence about Michael's specific actions in the past, would have overemphasized the likelihood that Michael acted in a manner that justified the officers' reaction.
 
 
 11
 A trial judge has broad discretion in deciding questions of admissibility of expert evidence under Federal Rule of Evidence 702 and in conducting the evidentiary balancing test required by Federal Rule of Evidence 403. We will reverse his decisions only in the case of a clear abuse of discretion.[3] In this case the judge did not abuse that discretion.
 
 
 12
 Our holding, and the trial judge's decision, find confirmation in an earlier opinion by this Court. Rascon v. Hardiman[4] was a § 1983 action against prison guards who had beaten an inmate who had a history of mental problems. The magistrate refused to receive evidence of the inmate's mental health history because the prejudicial effect of such evidence would outweigh its probative value. The district court, and this Court, agreed.
 
 
 13
 The lesson of Rascon is the danger that a jury will conclude that a mentally deficient plaintiff, regardless of his actual behavior, somehow "asked for" mistreatment at the hands of two policemen is greater than the value of such evidence to explain the police officers' use of force. That general proposition seems especially correct where--as here--the police officers had no specific knowledge of Michael's condition before they tried to take him away. The trial judge found, and we agree, that the forbidden evidence would have shifted the focus from Michael's actions to his condition. Only his actions can justify the use of force. Evidence as to the general propensity of people suffering his ailments to make similar attacks would have been of more prejudicial than probative value to the defendants.
 
 B. Trial Judge Bias
 
 14
 The defendants charge that the trial judge abandoned his role as an impartial arbiter of the law. A careful review of the record reveals those charges to be a mischaracterization of the trial, almost entirely without merit.
 
 
 15
 The defendants are correct in saying that the judge did strike one defendant's qualified immunity defense; allow only the plaintiffs to use evidence of Michael's mental history; interrupt the examination of witnesses; and entertain sua sponte objections. The sum of these actions, however, did not prejudice the appellants' defense.
 
 
 16
 The first alleged impropriety was a legal decision. It goes unchallenged by the defendants as such. There is no justification for describing a legal decision adverse to the defendants as part of the trial judge's advocatorial assistance to the plaintiffs.
 
 
 17
 The second arises from the judge's conscientious effort to uphold the motion in limine as to the defendants' use of psychiatric evidence while also allowing Mr. and Mrs. Wallace a chance to use related evidence to explain why they sought involuntary commitment for their son. We have already noted that a trial court has broad discretion in controlling the admission of evidence. The defendants cannot show that the trial judge abused that discretion by preventing both parties from presenting legally irrelevant evidence. The record reveals no improper assistance to the plaintiffs. It shows, instead, a concern that the plaintiffs themselves not abuse a possible evidentiary advantage. The judge actually warned them that if they did not use less of such evidence, he would be forced to deny the motion in limine or retry the case. He understood the evidentiary problem, and controlled it well.
 
 
 18
 As for the third alleged error, the judge's "interference" with witnesses apparently consisted only in refusing to let the defendants' counsel use deposition testimony when he believed it did not impeach the testifying witness. Again, the appellants do not question the legal correctness of these actions; without additional prejudicial behavior they do not contribute to a biased trial.
 
 
 19
 Finally, we find only a few instances of the fourth and final alleged error, that the judge entertained sua sponte objections. In each of these instances, the judge's object was to clarify the questions asked by counsel on both sides (such objections were not entertained solely against the appellants) or to remind stubborn lawyers that their questions had been already asked and answered. This Court has noted that lawyers who do not obey a judge's instructions as to their examination of witnesses can expect those instructions to be repeated.[5] In the one case where the appellants' counsel brought to the judge's attention the absence of any objection from the plaintiffs, he immediately admitted that he had anticipated an objection from the plaintiffs' counsel, who had already stood to make it. We refuse to find that a few instances of conscientious, if occasionally premature, efforts by a trial judge to control consistently improper questioning by counsel amount to the sort of bias that would have unfairly limited the appellants' defense.
 
 
 20
 A charge that a trial judge has assumed the role of advocate and deprived one side of a fair trial is a serious one. It should not be made lightly, or without support. In this case, we find that the allegations of partiality, when examined against the record, are either untrue or so insubstantial that the defendants' contention that they received an unfair trial must fail.
 
 C. Insufficiency of Evidence
 
 21
 The defendants argue that the trial court erred in denying their motion for a directed verdict, and that there was insufficient evidence to support a jury verdict (especially as to punitive damages) in favor of the Wallaces. We disagree.
 
 
 22
 Although this Court reviews de novo the trial court's denial of a directed verdict,[6] we will not reverse such a denial unless the evidence permits only one reasonable conclusion: a verdict in favor of the defendants.[7] We view all evidence in the light most favorable to the plaintiffs.[8] In this case there was evidence from the testimony of James, Jacquelyn, and Michael Wallace that both father and son did suffer injuries from the actions of Officers Mulholland and Leon. The defendants correctly note that jury awards of punitive damages for unconstitutional force (as to Michael) and arrest without probable cause (as to James) must be supported by a finding that the officers acted with the intent to harm.[9] Nonetheless, we find that the Wallaces' testimony does support such findings, findings clearly within the fact-finding realm of the jury. This Court has stated eloquently that a finding of specific physical injuries is not essential in cases such as this because "the state is not free to inflict ... pains without cause just so long as it is careful to leave no marks".[10] The Wallaces may have borne no lasting physical scars, but they did present sufficient evidence for a reasonable jury to conclude that they did suffer injuries from the excessive and unnecessary exercise of police force.
 
 D. Attorney Fees
 
 23
 Pursuant to 42 U.S.C. § 1988 the plaintiffs sought attorney fees of $60,000 (400 hours at $150 an hour) and costs of $3,254.45. They supported this request with information about the plaintiffs' counsel and with affidavits from three other local lawyers with § 1983 experience. The defendants contested these charges, and the trial court reduced the attorney fees to $43,200 (288 hours at $150 an hour) and the costs to $2,912.65.
 
 
 24
 The appellants challenge this award. In so doing they join, without distinguishing, three separate arguments. Those arguments can be found in the appellants' summary of their argument on this issue: "In light of the unreasonableness of both the rate requested and hours of compensation awarded, based upon the extent of success achieved, the district court continued its role as advocate for the plaintiffs in the award of attorney's fees hereinbelow."
 
 
 25
 We note, first, that this summary could be read only to make another argument that the trial judge exhibited biased behavior. If that is its sole intent, we find, as we found above, no merit in the argument. The appellants cannot mean that the judge's decision on this matter, made after trial, affected the jury's verdict. Nor can they mean that the court could have avoided deciding whether the plaintiffs were entitled to an award of attorney fees, and how much that award should be. Because the judge's ultimate decision cost the defendants money does not mean that he acted as an advocate for the plaintiffs. The appellants' argument is no more than an unsupported contention that the trial court's legal decision as to the award of attorney fees was determined by his personal bias in the case; that argument is without merit.
 
 
 26
 Taken as a challenge to the amount of the award, or to the award itself, the appellants' brief contains two other, separate arguments. First is an argument that the fees awarded are unreasonably high. Second is an argument that the award, at least in part, was unjustified because it was disproportionate to the results obtained by the plaintiffs. The two arguments are entirely distinct. The Supreme Court has said:
 
 
 27
 The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.
 
 
 28
 ....
 
 
 29
 The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."[11]
 
 
 30
 We will read the appellants' brief to challenge the district court's award on both of these grounds.
 
 
 31
 As to the first ground, that the award (without regard to the results achieved) was unreasonably high, the appellants' argument is unsubstantiated. They contend that the judge should have based his decision on the customary market rates for similar legal work. That is exactly what the judge did do. That a layman might consider the fees awarded to be high is unimportant, and irrelevant. The appellants have presented nothing other than speculative hyperbole to suggest that the fees awarded were unreasonably high.
 
 
 32
 As to the second ground, that the attorney fees awarded are disproportionate to the damages awarded to the plaintiffs, the appellants are wrong on the law. The Supreme Court has indicated that there must be some connection between a § 1983 plaintiff's success and the attorney fees he wins under § 1988;[12] it has not required, or even sanctioned, a proportional review of the two awards. In Hensley v. Eckerhart the Court held only that reasonable attorney fees may not be awarded for work on clearly unrelated claims on which the plaintiffs did not prevail; attorney fees may only be awarded for the claims on which the plaintiffs did prevail.[13]
 
 
 33
 Thus, Hensley does not direct a reviewing court to the financial terms of the plaintiff's success, or to the proportionality between the jury award and the attorney fees. It insists that attorney fees be awarded only for claims on which the plaintiffs have prevailed. Neither the Supreme Court nor this Court has required any correspondence between the degree to which a plaintiff has financially prevailed and the attorney fees awarded to him. The defendants do not suggest, as Hensley requires, that the plaintiffs have not prevailed on claims "distinct in all respects" from those on which they did prevail.[14] The claims on which the plaintiffs did not ultimately prevail were all related to the claims on which they did prevail. This is a case in which the plaintiffs' "claims for relief ... involve a common core of facts or [are] based on related legal theories".[15] As the Court wrote in Hensley, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised".[16] In the simplest terms, the plaintiffs won their case. We therefore affirm the award of attorney fees.
 
 II. CONCLUSION
 
 34
 The defendants challenge decisions and actions by the trial court that are, on our review of the record, unchallengeable. We therefore AFFIRM.
 
 
 
 [1]
 The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation
 
 
 [2]
 We note that the judgment entered by the trial court awarded the $1,000 award of compensatory damages to James Wallace against Officer Leon instead of Mulholland. Neither party questions this apparent error on appeal. We note, however, that relief under Fed.R.Civ.P. 60(a) is available at any time for the correction of clerical errors in the entry of a judgment. It may be granted even after the affirmance of that judgment by this Court. Klingman v. Levinson, 877 F.2d 1357 (7th Cir.1989)
 
 
 [3]
 See, e.g., United States v. Davis, 772 F.2d 1339, 1343-44 (7th Cir.), cert. denied, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985)
 
 
 [4]
 803 F.2d 269 (7th Cir.1986)
 
 
 [5]
 United States v. Kwiat, 817 F.2d 440, 447 (7th Cir.1987) (citing United States v. Williams, 809 F.2d 1072, 1086-91 (5th Cir.1987))
 
 
 [6]
 Warrington v. Elgin, Joliet & Eastern Ry. Co., 901 F.2d 88, 89 (7th Cir.1990)
 
 
 [7]
 See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)
 
 
 [8]
 Warrington, 901 F.2d at 90
 
 
 [9]
 Hagge v. Bauer, 827 F.2d 101, 110 (7th Cir.1987) (unconstitutional force); Coulter v. Vitale, 882 F.2d 1286, 1289 (7th Cir.1989) (probable cause)
 
 
 [10]
 Williams v. Boles, 841 F.2d 181, 183 (7th Cir.1988)
 
 
 [11]
 Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983)
 
 
 [12]
 Id
 
 
 [13]
 Id. at 440, 103 S.Ct. at 1943
 
 
 [14]
 Id
 
 
 [15]
 Id. at 435, 103 S.Ct. at 1940
 
 
 [16]
 Id. at 440, 103 S.Ct. at 1943