Anthony WILSON, Plaintiff–Appellant,

v.

Billy GROANING and Chris Dunn, Defendants–Appellees.

No. 92–3525.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1993.

Decided June 2, 1994.

Thomas R. Peters (argued), James E. Neville, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, IL, for plaintiff-appellant.

Rosalyn B. Kaplan, Asst. Atty. Gen., Daniel N. Malato, Asst. Atty. Gen. (argued), Civ. Appeals Div., Chicago, IL, for defendants-appellees.

Before CUDAHY and RIPPLE, Circuit Judges, and WILLIAMS, District Judge.[*]

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff-appellant Anthony Wilson ("Wilson") brought suit under 42 U.S.C. § 1983 against two correctional officers, defendants-appellees Billy Groaning ("Groaning") and Chris Dunn ("Dunn"), claiming that they used excessive force when returning him to his cell at the Shawnee Correctional Center ("Shawnee") in Vienna, Illinois. After a jury trial, Magistrate Judge Gerald B. Cohn entered judgment on the jury verdict for defendants. Wilson appeals, claiming that he was denied a fair trial because the trial court improperly admitted his prior convictions and evidence that he spat on Groaning. He also claims that the court improperly denied his motion for a mistrial after Dunn testified that Wilson sprayed him with urine and fecal matter. We affirm.

## I. Background

On March 18, 1989, Wilson was a prisoner at Shawnee serving time for attempted murder, aggravated battery, and unlawful use of a weapon. Wilson was housed in the maximum segregation unit of the prison because he was in the "circuit rider" program which permits periodic transfer of inmates with disciplinary problems to different prisons.

At approximately 7:40 p.m., Wilson was placed in handcuffs and escorted by Groaning and Dunn from his maximum segregation cell to receive medication for his recurring headaches.[1] Wilson refused the medication because it appeared to be different from that he normally received.

On the way back to his cell, Wilson walked past his open cell and attempted to speak to another prisoner several feet ahead. Groaning ordered Wilson to return to his cell. When Wilson did not respond, Groaning followed him and grabbed him by the arm to take him back to his cell. Wilson pulled away. Groaning grabbed Wilson's arm again and pulled him down the hallway.

As they were returning to the cell, Wilson objected to being touched and spat in Groaning's face. At the same time that Wilson spat, he raised his handcuffed hands up above his head as if to strike Groaning. Groaning responded by punching Wilson in the face. Wilson ceased resisting after the punch. Then, Dunn and Groaning grabbed Wilson, pulled him down to the floor, and pushed him back into his cell.[2]

At 8:30 p.m., Wilson received medical treatment for superficial cuts under his eye and on his arm. Some time later, Wilson sprayed Dunn with a mixture of feces and urine while he was making rounds through the cellblock.

On June 13, 1989, Wilson filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Groaning and Dunn. On July 24 and 25, 1991, a jury trial was held before Magistrate Judge Cohn on plaintiff's excessive use of force claim.[3] At the conclusion of the trial, the jury found in favor of defendants, and judgment was entered by the Magistrate Judge a few days later. Wilson moved for a new trial based upon the admission of his

---

[*] The Honorable Ann Claire Williams, District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Normally, a medical technician or nurse dispenses medication at the prisoner's cell. Wilson had to be escorted to the front of the segregation unit to take his medication because of complaints of sexual misconduct.

2. In contrast, Wilson testified that he had shackles on his wrists and both legs, and that he could not have raised his hands in a threatening manner because he was handcuffed in the back.

Wilson also claimed that after he was punched, he was dazed, and fell to the floor. Then, Groaning hit him in the head and kicked him several times, and Groaning and Dunn dragged him into his cell. Since the jury found in favor of defendants, we accept defendants' version of these disputed facts. *See TXO Prod. Corp. v. Alliance Resources Corp.,* —— U.S. ——, ——————, 113 S.Ct. 2711, 2714–15, 125 L.Ed.2d 366 (1993).

3. On December 13, 1989, the parties consented in writing to the entry of final judgment by the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

prior convictions and testimony that he spat in Groaning's face, and the denial of his motion for a mistrial based on the prejudicial impact of the stricken fecal matter testimony. Wilson's motion was denied on September 14, 1992. This appeal followed.

## II. *Standard of Review*

 The issue here is "[w]hether, due to the admission of highly prejudicial evidence, the trial court erred in not ordering a new trial." Appellant's Brief at 3. In order to receive a new trial, Wilson must show that the trial court's errors were substantial enough to deny him a fair trial. *See Perry v. Larson*, 794 F.2d 279, 285 (7th Cir.1986). We will not reverse a district court's denial of a motion for new trial unless a clear abuse of discretion is shown. *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989). As we stated in *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir.1993), "[c]ivil litigants are entitled to a fair trial, not a perfect one ... a new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties."

## III. *Discussion*

Wilson claims that by allowing the jury to hear about the spitting, his prior convictions, and the spraying of the fecal matter, the trial court committed errors so substantial that he was denied a fair trial. Appellant's Brief at 7. We address each of these claimed errors in turn.

### A. *Admission of Spitting Incident*

Before trial, Wilson moved to exclude evidence that he spat on Groaning immediately before Groaning punched him. In denying this motion, the Magistrate Judge ruled that the spitting incident was part of the operative facts of the case. In addition, the court reasoned that this evidence would not be unduly prejudicial because Assistant Warden

Judson Childs would testify that spitting alone would not authorize the use of force alleged.

Indeed, at trial, Groaning acknowledged that being spat upon, alone, would not justify hitting Wilson. Likewise, Dunn stated that spitting in someone's face would not justify the use of force against that person, and that Groaning struck Wilson because he raised his hands in a threatening manner. Finally, Assistant Warden Childs testified that he would not use force if an inmate spat on him, and that he had not used force when he was faced with a similar situation.

 Wilson argues, as he did prior to trial, that the spitting evidence was irrelevant since the defendants and Assistant Warden Childs "all testified that the spitting would not justify the use of force upon [a] prisoner." Appellant's Brief at 8. Wilson also contends that because of the highly prejudicial impact of this testimony, and its lack of probative value, it should have been excluded under Federal Rules of Evidence 402[4] and 403.[5] Appellant's Brief at 11. We disagree.

The issue in this case was whether Groaning used excessive force to restrain Wilson. The resolution of this issue depended heavily upon the jury's understanding of the altercation that took place between Wilson and Groaning on the evening of March 18, 1989. As the trial court pointed out, the evidence that Wilson spat on Groaning immediately prior to being punched, was relevant because it was one of the facts intimately related to the use of force by Groaning. "Evidence is relevant if its exclusion would leave a chronological and conceptual void in the story." *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986). Leaving out this evidence would have left the jury with an unduly sanitized and incomplete version of the facts.

4. Rule 402 provides in pertinent part: "All relevant evidence is admissible, except as otherwise provided ... by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed.R.Evid. 402.

5. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

Moreover, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Here, Groaning testified that Wilson ignored his repeated orders to return to his cell, jerked away from him, and was going to hit him if he did not strike first. The evidence that Wilson spat on Groaning was relevant because it had a tendency to make Groaning's claims that he felt threatened more probable.

■ Also, as this court noted in *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir.1986): "Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, 'the relevant inquiry is whether any *unfair prejudice* from the evidence substantially outweighs its probative value.'" *Id.* (quoting *United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir.); *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)). Here, the witnesses clearly stated that spitting would not justify the use of force alleged, therefore, admission of that evidence could not result in unfair prejudice to Wilson.

## B. *Admission of Wilson's Prior Convictions*

Wilson was serving a sentence for attempted murder, unlawful use of a weapon, and attempted battery. While he was incarcerated, Wilson also pled guilty to attempted aggravated criminal sexual assault, armed violence, and two counts of aggravated battery.

Wilson requested that the court exclude all evidence of his prior convictions before trial.

In opposing plaintiff's motion *in limine*, defendants argued that Wilson's six prior convictions were relevant to show Officer Groaning's state of mind. The court rejected this rationale because Groaning did not know about the particular convictions before the incident. The court then considered the probative value of the convictions for impeachment purposes and their prejudicial impact as required by Fed.R.Evid. 609(a)(1).[6] In weighing the prejudice, the trial court noted the parties' decision to have Wilson restrained during the trial,[7] and reasoned that the admission of Wilson's convictions was not prejudicial because "the operative facts arise while the plaintiff is in the penitentiary serving a sentence ... so [the jury] know[s] that he's been convicted of something." [8] (Tr. 15).

Ultimately, the court only admitted three of Wilson's convictions. In reaching that decision, the trial court reasoned that it "might be prejudicial to overload the factfinder ... [by] put[ting] in all the convictions because [the jury] might well determine that as a result of having that many convictions, that regardless of how the facts come out, that Wilson is a person not deserving of any relief." (Tr. 15).

Whether a district court commits reversible error in admitting or excluding evidence is determined by the abuse of discretion standard. *Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir.1990). Moreover, this court has recognized that the trial court's balancing of probative value and unfair prejudice is highly discretionary and will be accorded great def-

6. Rule 609(a)(1) states in relevant part: "For the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year...." Fed.R.Evid. 609(a)(1).

7. The trial court remarked that "the restraints have been agreed to as the best situation under the circumstances." (Tr. 14). The judge instructed the jury to draw no inferences from Wilson's restraints. (Tr. 22). *Compare Lemons v. Skidmore*, 985 F.2d 354, 359 (7th Cir.1993) (holding that even if there is a finding of "extreme need" for restraints, the prisoner is entitled to the minimum restraints necessary).

8. On appeal, counsel argues that no further impeachment was necessary because: "Wilson was present at trial in a prison jumpsuit, shackled at the wrists, waist, and feet. Three correctional officers guarded [him] at counsel table. Testimony was elicited that Mr. Wilson was in a maximum segregation unit, and all operative facts occurred in that unit." Appellant's Reply Brief at 8. The court rejects this argument. Presumably, counsel agreed to the use of restraints and presence of the guards for security reasons. (Tr. 14). Moreover, both counsel mentioned the fact that Wilson was in segregation so that the jury would understand the circumstances of the altercation. (Tr. 24, 52).

erence. *Id.; Rascon v. Hardiman*, 803 F.2d 269, 278 (7th Cir.1986).

■ Contrary to plaintiff's assertion, the trial court did not abuse its discretion. It is well-settled that evidence of prior convictions is admissible in a civil case to impeach the credibility of the plaintiff—subject to the constraints of Rule 403.[9] Fed.R.Evid. 609(a)(1); *See also Wilson v. City of Chicago*, 6 F.3d 1233, 1237 (7th Cir.1993) (noting that the plaintiff prisoner who took the stand was subject to having his credibility impeached because he was a convicted felon). In the instant case, the trial court balanced the prejudice of admitting Wilson's six convictions for violent offenses against defendants' right to impeach Wilson's credibility with his prior convictions. In striking that balance, the Magistrate Judge concluded that based upon the circumstances, allowing the admission of three of Wilson's convictions did not pose a danger of unfair prejudice.

Furthermore, we note that plaintiff's counsel opted to soften the impact of this testimony by eliciting Wilson's convictions during his direct examination. Finally, defendants did not ask questions about the convictions on cross-examination or otherwise comment

upon them.[10] Thus, "[t]his was not a case where the defendants were permitted to 'harp on the plaintiff's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue to the plaintiff's conviction in the prior case.'" *Geitz*, 893 F.2d at 151 (quoting *Hernandez v. Cepeda*, 860 F.2d 260, 264 (7th Cir.1988)).[11] Therefore, plaintiff's argument must be rejected.

## C. Denial of Motion for a Mistrial

After thoroughly questioning Dunn about the circumstances surrounding the altercation between Groaning and Wilson, defendants' counsel asked: "What else happened on the night of March 18, 1989"? Dunn responded, "Later on that night I was making my rounds down the security hall and they have screens on the window and he squirted feces and urine on me." (Tr. 117). Wilson's counsel objected immediately on the grounds of relevance and prejudice, and requested a mistrial. At a sidebar, defendants' counsel claimed that this evidence was relevant to show that Wilson was not really injured during the altercation with defendants because later that evening he was able to assault Dunn in this way.

9. Plaintiff cites two prisoner civil rights cases, *Wallace v. Mulholland*, 957 F.2d 333 (7th Cir. 1992) and *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir.1986), for the proposition that "allowing a civil plaintiff's prior convictions into evidence might cause a jury to conclude that plaintiff was 'asking for mistreatment.'" Appellant's Brief at 16. These cases stand for no such proposition. In *Wallace*, the trial court's exclusion of evidence of the plaintiffs' *schizophrenia* was affirmed because it was "probably irrelevant, and certainly prejudicial" and might induce the jury to decide the case on the plaintiff's propensity to act in a way justifying force. 957 F.2d at 336. Likewise, in *Rascon*, this court affirmed exclusion of additional evidence on the plaintiff prisoner's *mental health history* because it might induce the jury to decide that the plaintiff was a "mental case" who needed to be subdued. 803 F.2d at 278.

10. It should be noted that defendants now argue that Wilson waived any objection he may have had to the introduction of his prior convictions because he disclosed this evidence on direct examination. This argument is not without support. *United States v. Williams*, 939 F.2d 721, 725 (9th Cir.1991) ("having introduced the fact of his prior conviction on direct examination, [the defendant] has waived his right to appeal the

district court's *in limine* ruling that the evidence was admissible under Rule 609(a)(1)."). *Accord Nicholson v. Layton*, 747 F.2d 1225, 1227 (8th Cir.1984).

Without deciding this issue, we note that this waiver rule is a harsh response to a party's reasonable tactical decision to soften the impact of prior convictions which the trial court has already ruled are admissible. *See United States v. Edmonds*, 524 F.2d 62, 64 n. 10 (D.C.Cir.1975) ("Since the acknowledgement [of prior convictions on direct examination] obviously was an attempt to soften the impact of the revelation which the Government expectably would have made pursuant to the judge's ruling, we cannot accept the argument that appellant is now foreclosed from attacking the ruling."). *Accord Coursey v. Broadhurst*, 888 F.2d 338, 341 n. 3 (5th Cir.1989). If plaintiff had failed to move *in limine* to preclude the admission of the convictions and just brought them out on direct examination without knowing defendants' intentions, it stands to reason that waiver would apply.

11. *Compare Wilson*, 6 F.3d at 1237 (plaintiff was prejudiced in that case because of the trial court's admission of substantial details concerning the plaintiff's conviction for murdering two policemen).

The trial court found that defendants' proffered reason for offering the testimony was "tenuous at best" and denied Wilson's motion, explaining that:

in the context of the trial, I don't think that the evidence is such that it would cause the jury not to be able to render a fair and impartial verdict. So what I'll do is strike the question and answer and I'll admonish the jury to disregard it [sic].

(Tr. 119). The Magistrate Judge then specifically instructed the jury as follows:

Ladies and gentlemen, the last question and answer concerned an event that took place after this event. I had told you at the beginning of the case what this was about and you'll be instructed again as to what facts you are to find and what determinations you are to make. Now this takes place later and it is not part of the factfinding mission of the jury. Accordingly, I'm going to strike the question and the answer, and you are instructed to disregard this and not to consider it in any way in reaching your decision on the facts.

(Tr. 119). Immediately thereafter, and in the jury's presence, Wilson's counsel also stated: "We absolutely positively object and disagree that the event referred to ever occurred and so I'll just say its an alleged event." (Tr. 120). Plaintiff now claims that it was error to deny his motion for a mistrial because "[s]triking this highly prejudicial testimony from the record [was] not ... sufficient to cure the harm already done since the evidence ... caused the jury to focus on this repulsive act and not on the altercation at issue." Appellant's Brief at 9.

"In deciding whether the court abused its discretion, we assume that the trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial." *United States v. Canino*, 949 F.2d 928, 937 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). When a curative instruction is given as here, the court must "presume[ ] that the jury will follow an instruction to disregard inadmissible evidence unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence

would be 'devastating'...." *United States v. Soria*, 965 F.2d 436, 441 (7th Cir.1992) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987)). *See also United States v. Mealy*, 851 F.2d 890, 903 (7th Cir.1988) ("We generally must assume that the jury followed the court's cautionary instructions.").

In the instant case, we are convinced that the fecal matter testimony lacked any probative value for defendants' stated purpose of showing that Wilson was not injured. It is also clear that this testimony was highly inflammatory and totally irrelevant to the issue of whether Groaning used excessive force in his altercation with Wilson. Such testimony should not have been heard by the jury. However, the court acted promptly to cure any prejudice by striking the question and the answer, and explicitly instructing the jurors that the later incident was not a part of their factfinding mission.

Although the court has found no cases with similar facts, there are many cases where this court has found that the prejudicial impact of the inadmissible testimony was sufficiently cured when the trial court struck the irrelevant material and instructed the jury to disregard it. *See e.g., United States v. Morrison*, 946 F.2d 484, 492–93 (7th Cir.1991) (no mistrial required in conspiracy to import marijuana case because the defendant's objection to inadmissible hearsay testimony that he flew planes carrying cocaine was sustained, testimony was cumulative, and the jury was instructed to disregard it); *United States v. Miroff*, 606 F.2d 777, 782 (7th Cir. 1979) (mistrial unnecessary in conspiracy to transport stolen property case where a Chicago detective explained his division's work "with known thieves, professional thieves," because the court took prompt action to negate potential prejudice by sustaining objection and striking the answer). In this case, the court took prompt corrective action to negate the potential prejudice.

In addition to reviewing the timeliness and effectiveness of the curative instruction, the court should review the record, as a whole, to determine whether the prejudice was alleviated by the court's actions. *See*

*Lentomyynti OY v. Medivac, Inc.*, 997 F.2d 364, 371 (7th Cir.1993) (finding no abuse of discretion in denying the motion for a mistrial because review of the record indicated that any potentially prejudicial confusion from the presentation of isolated deposition excerpts was cured by subsequent events at trial); *Rosenburg v. Lincoln Am. Life Ins. Co.*, 883 F.2d 1328, 1337 (7th Cir.1989) (although the closing argument of plaintiffs' counsel was intended to invoke the passions of the jury against the insurance company, it did not result in an unfair trial); *Darden v. Wainwright*, 477 U.S. 168, 180 n. 12, 106 S.Ct. 2464, 2471 n. 12, 91 L.Ed.2d 144 (1986) (prosecutor's inflammatory closing argument which included his wish that he could see the defendant's face blown off with a shotgun, did not require reversal when looking at the record and the evidence as a whole). As we earlier discussed, the record here provides ample support for defendants' version of the facts and the jury's verdict. Therefore, based upon the record as a whole, we find that there was no abuse of discretion in denying Wilson's motion for a mistrial.

### Conclusion

In sum, we reject Wilson's argument that he was denied a fair trial on any ground. The Magistrate Judge properly admitted the evidence of Wilson's spitting, and did not abuse his discretion in admitting evidence of three of Wilson's prior convictions pursuant to Fed.R.Evid. 609(a)(1). Lastly, the trial court permissibly determined that the potential for prejudice arising out of the stricken fecal spray testimony was not so serious as to warrant a mistrial. Accordingly, the judgment of the trial court is AFFIRMED.