**TRW TITLE INSURANCE COMPANY, Plaintiff,**

v.

**SECURITY UNION TITLE INSURANCE COMPANY, Defendant/Third Party Plaintiff,**

v.

**LIBERTY NATIONAL TITLE INSUR- ANCE COMPANY d/b/a Liberty Title In- surance Company and Edward G. Wells, Third Party Defendants.**

No. 93 C 7555.

United States District Court, N.D. Illinois, Eastern Division.

June 29, 1995.

William J. Holloway, Michael John Leech, William G. Swindal, Marcos Reilly, John Raymond Rapasky, III, Robert Hill Smeltzer, Hinshaw & Culbertson, Chicago, IL, for TRW Title Ins. Co.

Barrie Laine Brejcha, William Michael Sneed, Thomas Anthony Doyle, Adriane Worthington Burkland, Baker & McKenzie, Chicago, IL, for Security Union Title Ins. Co.

Gary W. Leydig, James E. McParland, Gerald Haberkorn, Levin, McParland, Phillips, Leydig & Haberkorn, Chicago, IL, for Liberty Nat. Title Ins. Co.

Edward Wells, Palatine, IL, pro se.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

TRW Title Insurance Company ("TRW") seeks to bar the proposed expert of Security

Union Title Insurance Company ("Security"), John Bonacci, Jr., from testifying in this case. TRW argues that Mr. Bonacci's testimony is neither expert on the issues about which he has rendered an opinion nor reliable. TRW's motion to exclude Mr. Bonacci's expert testimony is granted in part and denied in part.

■■■ A trial judge has broad discretion to determine whether expert opinion testimony is admissible. *Wallace v. Mulholland,* 957 F.2d 333, 336 (7th Cir.1992); *Bradley v. Brown,* 42 F.3d 434, 436 (7th Cir.1994). In making her decision, the trial judge must ensure that all expert testimony admitted is both relevant and reliable. *Frymire–Brinati v. KPMG Peat Marwick,* 2 F.3d 183, 186 (7th Cir.1993) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, —, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)). The proponent of the proffered expert testimony, *i.e.,* Security in the present case, bears the burden of establishing its admissibility by a preponderance of the evidence. *Bradley v. Brown,* 852 F.Supp. 690, 697 (N.D.Ind.), *aff'd.,* 42 F.3d 434 (7th Cir.1994) (citation omitted). Federal Rule of Evidence 702 permits expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID.P. 702.

> The touchstone of admissibility under Rule 702 is helpfulness to the jury ... An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert.

*U.S. v. Benson,* 941 F.2d 598, 604 (7th Cir. 1991).

■■■ Mr. Bonacci's first opinion is that "[w]ith respect to Security's escrow reviews of Liberty prior to December 1989, Security conducted itself reasonably under the circumstances." Mr. Bonacci offers three reasons, or explanatory opinions, for this conclusion. The first is that it was not unusual for title insurance agents to not reconcile their escrow accounts on time. This opinion, however, is irrelevant because TRW's claim is that Security never reconciled the escrow account and not that Security failed to do so in a timely manner. Mr. Bonacci's second explanatory opinion is that under the Issuing Agency Agreement, Security could only recommend rather than require Liberty to reconcile its accounts. In the third explanation, he opines that due to Security's lawsuit with Liberty, "Security was limited in its ability to impose its will on Liberty by threatening termination of the agency relationship." The second opinion is a conclusion regarding Security's rights under the agreement that only a lawyer is qualified to draw. The third opinion similarly is a deduction regarding the legal effect of the litigation between Security and Liberty. As an auditor of title insurance underwriters, Mr. Bonacci has no special skill, experience, training, or education in interpreting the legal impact of contracts or pending litigation. Accordingly, Mr. Bonacci's expertise does not qualify him to provide these two explanatory opinions.

■■■ Mr. Bonacci also offers the opinion that "[w]ith respect to Security's termination escrow review of Liberty in December 1989 and January 1990, Security conducted itself reasonably under the circumstances." The bases listed for Mr. Bonacci's opinion in this regard are that (1) Security attempted three times to perform an escrow review in December and January, 1990; (2) Liberty did not provide all of the required documents requested by Security; (3) Security was therefore unable to complete its review; and (4) Security's conduct was reasonable. None of this depends on accounting principles. The first and second statements are matters of fact. Whether they are contested or not, they are not matters for expert testimony.

■■■ The third statement is a conclusion that could be the subject of expert testimony, depending on how it is presented and the basis for the testimony. Mr. Bonacci could testify either based on his own examination of the information received by Security (which he apparently did not do) or that hypothetically, if told the information that Security had, it could not complete an auditing review (assuming Mr. Bonacci can state a basis for this conclusion founded on account-

ing principles). My concern is that Mr. Bonacci's opinion could be read to indicate that he was not intending to express his own accounting opinion but instead to merely reiterate the opinion of Security personnel that they could not complete the audit. This Mr. Bonacci may not do. That is not the function of an expert.

■ Mr. Bonacci's further opinion that Security's conduct was reasonable has not been shown to be admissible. In his deposition and Rule 26 opinion, it is clear that Mr. Bonacci's opinion is based at least in part on his beliefs about Security's legal ability to obtain more records. Mr. Bonacci, as already noted, could not, however, testify about legal issues. It is also clear that Mr. Bonacci employs no accounting principles or practices in reaching this opinion—indeed, he testified that if a client had been as uncooperative as Liberty appeared to be, he would have advised his own firm to withdraw from an audit. (Dep. tr. 110) Notably, Mr. Bonacci does not even set forth the standard of conduct for performing a termination escrow review.

Mr. Bonacci does rely on his expertise as a title insurance underwriter in rebutting the deposition testimony of TRW's expert, Mr. Appuhn. Bonacci Report I(B)(6), p. 2; III(B)(8), (12), (13), pp. 6–7. For instance, to counter Mr. Appuhn's assertion that Security should have used alternative testing techniques such as the "acid" test to perform the termination escrow review, Mr. Bonacci details the exact documentation Security would have needed from Liberty to perform the "acid" test. Bonacci Report, III(B)(13), p. 8. Mr. Bonacci may testify to this opinion.