REVISED DECEMBER 5, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-20337

TEXAS SOIL RECYCLING, INC.

Plaintiff-Appellant,

BOBBY E. SELTZ; JOE R. CALVERT; LISA G. CALVERT

Plaintiffs-Counter Defendants-Appellants,

and

JAMES J. GILLILAND, JR.

Counter Defendant-Appellant

v.

INTERCARGO INSURANCE COMPANY

Defendant-Counter Claimant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas, Houston Division

November 15, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Texas Soil Recycling Inc., Bobby E. Seltz, Joe E. Calvert, Lisa G. Calvert, and James J. Gilliland (collectively "plaintiffs") appeal from the district court's order granting summary judgment in favor of Intercargo Insurance Company. Plaintiffs contend that the district court erred in dismissing their claims for negligence, negligent misrepresentation, grossly negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act as barred by the statute of limitations. Plaintiffs also contend that the district court erred in granting summary judgment to Intercargo on plaintiffs' promissory estoppel and fraud claims and on Intercargo's counterclaim for indemnity. While this appeal was pending, Intercargo filed a motion for leave to allow the district court to correct its order on final summary judgment. We affirm the judgment of the district court and deny Intercargo's motion for leave without prejudice.

I.      FACTS AND PROCEDURAL HISTORY

Texas Soil Recycling, Inc. (Texas Soil) was formed in 1991 to clean soil that had become contaminated with hydrocarbons. Texas Soil leased a site near Houston, Texas from Waste Reduction Systems, Inc. (WRS) for its operations. WRS operated a landfill adjacent to the site and used the remediated soil from Texas Soil as fill dirt for the landfill. The lease between Texas Soil and WRS required Texas Soil to obtain a $75,000 performance bond to secure any environmental clean-up costs associated with the site upon termination of the lease. At the suggestion of WRS, Texas Soil obtained the bond from Intercargo Insurance Company through Rose-Tillmann, Inc., an insurance brokerage firm. In February 1992, James Gilliland, Bobby Seltz, Joe Calvert, and Lisa Calvert (the indemnitors) signed a general agreement of indemnity in Intercargo's favor for any damages or losses incurred by the execution of the bond. Intercargo renewed the bond on February 12, 1993 through

2

Cheri Davis, a surety bond underwriter for Rose-Tillmann, for one year.[1]

Later that year, WRS and Texas Soil executed an amended lease that required Texas Soil to renew the performance bond at least 45 days prior to the bond's expiration. If Texas Soil failed to renew the bond timely, the lease provided for default unless Texas Soil obtained a renewed bond within 20 days after written notice of the failure to renew. Default gave WRS the option of terminating the lease, taking possession of the premises, and pursuing any remedy provided by law. The parties agree that Texas Soil did not renew its bond with Intercargo 45 days prior to the expiration of the bond. Nor did Texas Soil seek an indemnity bond from another source in order to comply with its lease.

On January 10, 1994, 33 days before the bond's expiration, Cheri Davis of Rose-Tillmann sent a fax to Steve Hecht of Texas Soil stating that the bond "will renew" on February 12, 1994, and requesting certain financial statements in order to renew the bond. On that same day, the chief financial officer of WRS sent Hecht a letter notifying him of Texas Soil's failure to renew the bond 45 days prior to the expiration of the bond and of Texas Soil's right to cure the default within 20 days. Texas Soil sent the information requested by Cheri Davis for the bond renewal.

Plaintiffs claim that Davis promised them several times over the phone that the bond would be issued. They also claim that on February 8, 1994, during a telephone conference call, the Chairman and CEO of Rose-Tillmann, Craig Johnston, advised plaintiffs that he would execute the bond that afternoon. During a deposition in 1997, Johnson confirmed that Intercargo had approved

---

[1]Three Rose-Tillmann employees, Craig Johnson, Cheri Davis, and Raul Castaneda, had a limited power of attorney executed by Intercargo to be used solely in conjunction with Texas Soil's 1993 bond.

3

the bond renewal prior to February 7, 1994.[2]  However, WRS had notified Intercargo, by letter dated February 7, 1994, that it had terminated Texas Soil's lease and was making demand under the bond. The claim by WRS on the bond terminated Intercargo's ability to renew the bond.  That same day, WRS sent Texas Soil notice that it was in default, that WRS had elected to terminate Texas Soil's right of possession of the leased premises, and that WRS was making a claim on the bond.  Without its lease, Texas Soil went out of business and filed for bankruptcy.

Texas Soil subsequently filed suit against WRS in state court.  During those proceedings, Texas Soil's attorney deposed Cheri Davis and Craig Johnston.  WRS filed suit in state court against Intercargo, based upon its claim against the bond.  Intercargo then made a demand upon the indemnitors for the amount claimed by WRS.  The two cases were consolidated, and WRS eventually settled with Intercargo for $86,563.95.  The indemnitors did not reimburse Intercargo.

On January 29, 1998, Texas Soil, Bobby Seltz, Joe Calvert and Lisa Calvert[3] filed suit in the Southern District of Texas against Intercargo alleging breach of contract, fraud, negligence, negligent misrepresentation, grossly negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act because of Intercargo's failure to renew the bond.  The individual plaintiffs also sought declaratory judgment that the general agreement of indemnity was null and unenforceable because of Intercargo's wrongful conduct.  Intercargo counterclaimed for breach of the indemnity agreement, requested judgment for the amount of its damages and attorney's fees in connection with the indemnity agreement, and joined James Gilliland as a party.

Intercargo filed a motion for partial summary judgment on January 4, 1999 that the statute

---

[2]This approval was apparently oral.  Nothing in the record indicates written approval for renewal.

[3]The Plaintiffs-Appellants will be collectively referred to as "Texas Soil" hereafter in this opinion.

of limitations barred plaintiffs' causes of action for negligence, negligent misrepresentation, grossly negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act. The court agreed and held that those claims were time-barred. Intercargo filed additional motions for summary judgment and partial summary judgment on the remaining claims. The court granted Intercargo's motion for summary judgment on Texas Soil's breach of contract, promissory estoppel, and fraud claims on March 28, 2000. The court also granted summary judgment to Intercargo on its counterclaim for damages resulting from WRS's claim on the bond, awarding Intercargo $86,563.95 in damages and $45,635.25 in attorneys' fees. Texas Soil timely filed an appeal in this court. While the appeal was pending, Intercargo filed a motion for leave to allow the district court to correct its order on final summary judgment pursuant to Rule 60(a) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

We review a district court's decision to grant or deny summary judgment de novo, applying the same criteria as the trial court.[4] Summary judgment is proper when the pleadings, depositions, admissions, and the answer to interrogatories together with affidavits, demonstrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment or partial judgment as a matter of law.[5]

## III. STATUTE OF LIMITATIONS

We turn first to Texas Soil's claim that the statute of limitations did not bar its claims of deceptive trade practices, negligence, negligent misrepresentation, and grossly negligent misrepresentation. As this is a diversity case in which the causes of action arise under state law, the

---

[4]*Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998).

[5]Fed. R. Civ. P. 56(c); *Burns*, 139 F.3d at 517-18.

district court properly applied Texas statutes of limitations to the claims presented.[6] Under Texas law, claims for negligence, negligent misrepresentation, and grossly negligent misrepresentation must be brought within two years from the time the cause of action accrues.[7] In general, a cause of action accrues and the limitations period begins when a wrongful act causes a legal injury.[8] In some cases, however, Texas courts have held that an action does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the wrongful action causing injury.[9] The "discovery rule" has been codified in the Texas Deceptive Trade Practices - Consumer Protection Act (DTPA), which provides that claims must be brought within two years after the date on which the false, misleading, or deceptive act or practice occurred, was discovered, or in the exercise of reasonable diligence should have been discovered.[10] Discovery does not necessarily mean "actual knowledge of the particulars of a cause of action."[11] Instead, the question is whether the plaintiff has "knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights."[12] When the plaintiff pleads the discovery rule as an exception to limitations, the defendant moving for summary judgment on limitations grounds has the burden of negating that exception by establishing that there is no genuine issue of fact about when the plaintiff discovered or

---

[6]*Kansa Reinsurance Co. v. Cong. Mortgage Corp.*, 20 F.3d 1362, 1368-69 (5th Cir. 1994).

[7]Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 1997); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (negligence); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (negligent misrepresentation).

[8]*S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

[9]*Id.*

[10]Tex. Bus. & Com. Code Ann. § 17.565 (Vernon 1987).

[11]*Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1141-42 (5th Cir. 1997).

[12]*Id.*

6

should have discovered the nature of his injury.[13]  Intercargo has met that burden.

Unquestionably, Texas Soil's injury occurred in February 1994 when it defaulted on its lease and WRS evicted it from the property.  Texas Soil knew the nature of its injury at that time, namely that Intercargo did not renew the bond.  Because Texas Soil did not file this lawsuit until January 1998, those claims subject to a two-year statute of limitations cannot stand.

Texas Soil argues that its claims did not accrue until it learned during discovery in the state lawsuit that Rose-Tillmann employees knew that WRS was attempting to prevent the bond's renewal. In *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, however, the Texas Supreme Court rejected an argument "that a claim does not accrue until the plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury."[14]  Texas Soil's injury was the loss of its lease.  The allegedly deceptive statements by Rose-Tillmann employees to Texas Soil representatives during the bond renewal process, even if relevant, are specific acts that "may have caused the injury."  Texas Soil's "discovery" of these acts by Cheri Davis and Craig Johnston less than two years prior to filing suit does not resuscitate these claims.  There being no genuine issue of material fact that Texas Soil discovered or should have discovered the nature of its injury, summary judgment is appropriate because these claims were filed after the statute of limitations had run.

IV.     PROMISSORY ESTOPPEL AND FRAUD

We apply Texas law to plaintiffs' remaining claims of promissory estoppel and fraud.[15]  Texas

---

[13]*Harbor Ins. Co. v. Urban Constr. Co.,* 990 F.2d 195, 199 (5th Cir. 1993); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

[14]988 S.W.2d at 749.

[15]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78  (1938).

Soil claims that Intercargo, through its authorized representatives, promised that the indemnity bond would be renewed and that Texas Soil relied upon that representation to its detriment. In its claim for fraud, Texas Soil argues that Cheri Davis and Craig Johnston made misrepresentations as to material facts upon which Texas Soil relied and, as a result, sustained damages.

The only written contract that existed between Texas Soil and Intercargo, and the only basis for any obligation of Intercargo to issue a bond to Texas Soil, was the General Agreement of Indemnity (GAI). Rather than convey a promise to renew the bond, the GAI specifically stated that Intercargo had "the right, at its option and in its sole discretion, to issue or cancel or decline the execution of any Bond, or renewal thereof, including a final Bond, when it has furnished a bid Bond." We focus, therefore, on Texas Soil's claim that Rose-Tillmann had the authority to bind Intercargo beyond the authority specifically noted in the 1993 "Limited Power of Attorney." Unless Texas Soil can demonstrate a principal-agent relationship between Intercargo and Rose-Tillmann beyond the specific power of attorney attached to the 1993 bond, Intercargo cannot be held liable as a principal for the actions or omissions of Rose-Tillmann.[16]

Under Texas law, an agent is someone authorized by a person or entity to transact business or manage some affair for that person or entity.[17] Generally, an agent has only such authority as the principal has either expressly or impliedly conferred on the agent.[18] Without actual or apparent

---

[16] *See Henry v. Lane*, 128 F. 243, 255 (5th Cir. 1904) (holding that if agents exceed their authority in signing a contract on behalf of a principal, it plainly does not bind him and there is no basis in law or equity for sustaining a suit against him).

[17] *First Valley Bank of Los Fresnos v. Martin*, 55 S.W.3d 172, 183 (Tex. App.--Corpus Christi 2001).

[18] 3 Tex. Jur. 3d *Agency* § 37 (1996).

8

authority, an agent may not bind a principal.[19] The appointment of an attorney-in-fact creates an agency relationship.[20] But powers of attorney have to be strictly construed and under no circumstances will the principal be bound beyond the plain import of the instrument.[21]

The indemnity bond became effective on February 12, 1993 and ended on February 12, 1994. The 1993 bond was signed by Steve Hecht for Texas Soil and Cheri Davis as Attorney-in-Fact for Intercargo. It bears the corporate seal of Intercargo and states that "[t]his obligation may be extended from year to year at the option of Surety, by issuing a new bond."

As the trial judge recognized, "The core issue here turns on the authority afforded by Intercargo to Rose-Tillmann employees such as Craig Johnson and Cheri Davis." The record indicates that Texas Soil had notice and knew of Rose-Tillmann's limited authority pursuant to the Limited Power of Attorney. The language of the limited power of attorney explicitly did not give the Rose-Tillmann employees authority to bind Intercargo to a renewal agreement without a signature; nor did it give Rose-Tillmann employees authority to bind Intercargo to an oral promise to sign a renewal agreement. The district court was correct in granting summary judgment on the claims for promissory estoppel and fraud because there is no genuine issue as to the fact that Rose-Tillmann lacked authority to bind Intercargo to renew Texas Soil's bond.

## V. INTERCARGO'S COUNTERCLAIM FOR INDEMNITY

The indemnitors appeal the trial judge's finding that Intercargo established the necessary elements of an indemnity claim. There being no dispute that the indemnitors signed the agreement,

---

[19] *First Valley Bank*, 55 S.W.3d at 183.

[20] *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.–Texarkana 1994).

[21] *Henry*, 128 F. at 250.

that a contractual indemnity agreement existed between Intercargo and the indemnitors, that the agreement obligated the indemnitors to indemnify Intercargo in the event claims were made on the bond, and that WRS made a claim on the bond, we affirm.

## VI.    MOTION FOR LEAVE TO CORRECT JUDGMENT

Rule 60(a) provides that this court may grant leave to the district court to correct clerical mistakes in judgments and errors arising from oversight or omission during the pendency of the appeal.  We deny the motion without prejudice to the movant's right to proceed under Rule 60(a) in the district court.[22]

For the reasons stated in this opinion, the judgment of the district court is AFFIRMED.

---

[22] *See Dura-Wood Treating Co. v. Century Forest Indus.*, 694 F.2d 112, 114 (5th Cir. 1982); *Wallace v. Mulholland,* 957 F.2d 333, 335 (7th Cir. 1992)*; Klingman v. Levinson*, 877 F.2d 1357, 1363 (7th Cir. 1989).