**ESTATE OF Daniel A. BORST, Plaintiff–Appellee,**

v.

**River Grove Police Officer Richard O'BRIEN, Star No. 16, in his individual and official capacity, Defendant–Appellant.**

Nos. 91–3087, 91–3383.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1992.

Decided Nov. 6, 1992.

512

Timothy J. Touhy, Chicago, Ill. (argued), for plaintiff-appellee in No. 91–3087.

Arthur E. Engelland, Timothy J. Touhy (argued), Daniel K. Touhy, Chicago, Ill., for plaintiff-appellee in No. 91–3383.

David Lincoln Ader, Thomas G. DiCianni (argued), Ancel, Glink, Diamond & Cope, Chicago, Ill., for defendant-appellant.

Before CUDAHY, FLAUM, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Daniel Borst brought a Section 1983 action against several River Grove police officers alleging, *inter alia*, excessive use of force in his arrest. Borst died of natural causes and his estate was substituted at trial. The jury found in favor of the defendant police officers on all counts, except that it awarded the estate $500 in compensatory damages and $500 in punitive damages against one defendant on the excessive force claim. Plaintiff then petitioned for attorneys' fees under 42 U.S.C. § 1988, seeking approximately $300,000 and costs of $5,662. The trial court reduced the fee amount and awarded $47,254.13 in attorneys' fees and all of plaintiff's requested costs. We affirm with a reduction in costs.

I.

On November 18, 1986, police were dispatched to the home of Daniel Borst, who lived on the top floor of an apartment building in River Grove, Illinois. There were complaints that he was standing on the pitched roof outside his window and acting wildly: drinking beer, screaming loudly and dropping objects from the roof. River Grove Police Officers Richard O'Brien, Roger Loni, Patrick Ryndak and Joseph Licari arrived at the scene, and Officers O'Brien, Licari and Loni entered the apartment while Officer Ryndak stayed below. O'Brien tried to coax Borst to come in from the icy roof, but Borst began throwing beer cans at him. Officer O'Brien then grabbed Borst's arm and went through the window onto the roof. Officer Loni came to the window and assisted O'Brien in handcuffing Borst, who was now wrestling with O'Brien. As O'Brien tried to guide Borst through the window, Borst began to struggle. O'Brien then stunned Borst once in the abdomen with his XR–5000 stun gun and proceeded to push Borst through the window. He was pulled into the apartment by Loni and Licari and brought to the River Grove police station where he was charged with disorderly conduct and resisting arrest.

Borst filed suit against officers O'Brien, Loni, Licari and Ryndak under Section 1983, ultimately alleging four counts: (1) excessive force and false arrest against all of the defendants; (2) malicious prosecution against O'Brien and Loni; (3) all the defendants' failure to prevent the violation of Borst's constitutional rights; and (4) conspiracy among the defendants to violate his rights. The malicious prosecution claim was dismissed on the pleadings and summary judgment was granted on the false arrest claims. The remaining claims were tried before a jury.

Borst died of natural causes before trial and his estate was substituted as the plaintiff. Borst's testimony given during discovery, however, was introduced at trial. His version of the events of the night in question is quite different from that reported by the police officers. Borst testified

that he was indeed on the roof on that night, but that O'Brien dragged him into the apartment where he was handcuffed and repeatedly punched and kicked by several police officers. He alleged that he was stunned several times on his back with the stun gun and was moved to the living room where he was again beaten before ultimately being taken to the police station. At trial plaintiff introduced a series of photographs which purportedly evidenced stun marks on Borst's back. Both plaintiff and defendants introduced expert testimony as to the validity of these photographs.

After the eight-day trial, the jury found defendants Loni, Licari and Ryndak not guilty on all counts. It found O'Brien not guilty on the failure to protect and conspiracy claims, but guilty on the excessive use of force claim. The jury awarded plaintiff $500 in compensatory damages and $500 in punitive damages, specifically finding that, on the preponderance of the evidence, O'Brien's acts or omissions were done "maliciously, wantonly or oppressively."

Plaintiff then filed an attorneys' fees petition pursuant to 42 U.S.C. § 1988, and a request for costs. Plaintiff submitted fees totaling approximately $146,416, and then requested that the amount be doubled because of the risk of losing the case in light of a 40 percent contingent fee agreement—bringing the total request to roughly $300,000. The district court recalculated the lodestar amount by reviewing the time entries and reducing the total hours from 760.60 to 580.025. It also reduced the requested hourly rate for each attorney working on the case. The revised lodestar—$78,756.88—was then reduced by 40 percent to bring the amount in line with the limited success obtained by the plaintiff. The trial court awarded plaintiff attorneys' fees in the amount of $47,254.13 and $5,662.11 in costs. Defendant O'Brien appeals, challenging the amount of fees awarded and the full award of costs.[1]

## II.

■ Appellate review of attorneys' fees awards is limited to a "highly deferential abuse of discretion standard." *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir.1992); *Dutchak v. Central States, S.E. & S.W. Areas Pension Fund*, 932 F.2d 591, 596 (7th Cir.1991). Indeed, this court has noted that

[i]f ever there was a case for reviewing the determinations of a trial court under a highly deferential version of the "abuse of discretion" standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court.

*Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir.1988). Such deference is warranted for essentially three reasons. First, the district court is accorded this great discretion in light of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Second, the need for uniformity in awarding attorneys' fees is not so great as to warrant "microscopic appellate scrutiny." *Ustrak*, 851 F.2d at 987. Finally, reviewing courts should defer to the district court's determination so as to avoid "a second major litigation" strictly over attorneys' fees. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *see also Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416 (7th Cir.1991) (noting that case, which was settled before trial, spawned five years of litigation over issue of attorneys' fees, generating fees of over $45,000 for plaintiff alone). We can think of few matters more wasteful of judicial resources than ancillary litigation over an attorneys' fee award.

### A.

■ Defendant first argues that plaintiff is not entitled to an attorneys' fee award because the plaintiff was not suc-

---

1. Defendants O'Brien, Loni, Ryndak and Licari appealed the award of attorneys' fees. Loni, Ryndak and Licari subsequently filed a motion for voluntary dismissal, which we granted. O'Brien then appealed the award of costs, and the two appeals were consolidated.

cessful on its major claim or because the plaintiff's success was only negligible. These arguments are without merit. To be eligible for attorneys' fees under 42 U.S.C. § 1988, a plaintiff need only be a prevailing party. Parties may be considered to have prevailed "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (citation omitted); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989) (rejecting requirement that plaintiff be successful on "central issue" of litigation in order to be prevailing party). Plaintiff need only show that resolution of the dispute changed the legal relationship between it and the defendant. *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493. Although in this case the plaintiff was not successful on all of its claims, the jury did award relief on the excessive force claim. The fact that the jury awarded only a small percentage of what was requested is irrelevant. *Id.* at 793, 109 S.Ct. at 1493 ("the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*"). Indeed, a party who receives only nominal damages is deemed to have prevailed, and is thus eligible for attorneys' fees. *Ustrak*, 851 F.2d at 989; *Smith v. DeBartoli*, 769 F.2d 451, 453 (7th Cir.1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1380, 89 L.Ed.2d 606 (1986); *Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir.1984); *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); *Domegan v. Ponte*, 972 F.2d 401, 407 (1st Cir.1992); *Romberg v. Nicols*, 970 F.2d 512, 519 (9th Cir.1992), *petition for cert. filed*, 61 U.S.L.W. 3207 (U.S. Sept. 3,

1992) (No. 92–402); *Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir.1991); *Allen v. Higgins*, 902 F.2d 682, 684 (8th Cir.1990); *Scofield v. City of Hillsborough*, 862 F.2d 759, 766 (9th Cir.1988); *Coleman v. Turner*, 838 F.2d 1004, 1005 (8th Cir.1988); *Nephew v. City of Aurora*, 830 F.2d 1547, 1550 (10th Cir.1987) (en banc), *cert. denied*, 485 U.S. 976, 108 S.Ct. 1269, 99 L.Ed.2d 481 (1988); *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987). *But see Estate of Farrar v. Cain*, 941 F.2d 1311 (5th Cir.1991), *cert. granted sub nom., Estate of Farrar v. Hobby*, —— U.S. ——, 112 S.Ct. 1159, 117 L.Ed.2d 407 (1992). Therefore, the district court did not abuse its discretion in awarding attorneys' fees in the first instance.

### B.

The defendant next contends that, assuming the plaintiff is entitled to some fee award, the trial court's award was excessive. He argues that the district judge erred in his recalculation of the submitted lodestar and again in failing to reduce it in the light of the limited success of the litigation.

 It is clear that the starting point in determining the amount of attorneys' fees is the lodestar. This is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The burden is on the party seeking the award to substantiate the hours worked and the rate claimed. *Id.* The district court must then review the fee request, and may increase or decrease it in the light of factors adopted by Congress in enacting § 1988, now known simply as the *Hensley* factors.[2] *Id.* at 429–30 n. 3, 103 S.Ct. at 1937–38 n. 3. This may not be done arbitrarily, however, and a "concise

---

**2.** These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. S.Rep. No. 1011, 94th Cong., 2d Sess., 6 (1976) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974); H.R.Rep. No. 1558, 94th Cong., 2d Sess., 8 (1976) (same)).

but clear explanation" should accompany any modification of the submitted lodestar. *Smith v. Great Am. Restaurants, Inc.,* 969 F.2d 430, 439 (7th Cir.1992). In analyzing the fee request, "the most critical factor is the degree of success obtained." *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941. A plaintiff should not be compensated for work performed on unsuccessful claims that are not legally or factually related to the claim on which the plaintiff prevailed. *Id.* Thus, a partially prevailing party should be compensated for the legal expenses the suit would have generated had it involved only the prevailing and other related claims. *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir.1988). A trial court should give its best estimate in light of its experience with the case to this "elusive counterfactual," *see id.* at 989, and detached reviewing courts should be reluctant to set aside these judgments.

■ Given the trial court's detailed evaluation of the fee request here and its strategic position in evaluating the attorneys' services, we cannot say that the modifications made in recalculating the lodestar were unreasonable. Plaintiff requested a lodestar amount of approximately $146,-416.68 representing the services of three attorneys totaling 757.45 hours at hourly rates of $185, $200 and $250, respectively. Plaintiff also requested that this lodestar be doubled, because of a 40 percent contingency fee agreement, to reflect the risk of losing the case. The trial court analyzed the submission and specifically reduced or eliminated excessive or cumulative hours. It reviewed the hours of each attorney separately, detailing the amount requested, the percentage reduced and the amount reduced, and gave examples of hours it believed to be cumulative and excessive. *Estate of Borst v. O'Brien,* No. 88–C8364, 1991 WL 158963, 1991 U.S. Dist. LEXIS 11064 (N.D.Ill. Aug. 8, 1991). The court reduced the number of hours requested for each attorney, denying 47.5, 22.3 and 110.75 hours, respectively, from the request. *Id.* 1991 WL 158963 at *2–4, 1991 U.S. Dist. LEXIS 11064 at *5–8. In addition, the court reduced the hourly rate requested for each attorney from $185 per hour, $250

per hour and $200–$250 per hour to $125 per hour, $175 per hour and $175 per hour, respectively, "[b]ased upon the qualifications of each attorney, and the actual skill and experience shown through the voluminous entry requests...." *Id.* 1991 WL 158963 at *4, 1991 U.S. Dist. LEXIS 11064 at *8. With these modifications, the court recalculated the lodestar to be $78,756.88.

■ Nor can we say that the trial court's reduction of the modified lodestar amount was unreasonable. The trial court was not satisfied that even the modified lodestar "represent[ed] the attorneys' award reasonably necessary to induce competent counsel to handle plaintiff's case," and cited two factors it deemed significant: first, the contingency fee agreement and, second, the amount involved and the results obtained. *Id.* 1991 WL 158963 at *4, 1991 U.S. Dist. LEXIS 11064 at *9–10. The court noted that the plaintiff was only successful on one of its claims, and that the jury awarded the plaintiff less than 1 percent of the damages sought. The court then reduced the lodestar amount by 40 percent, holding that the time the attorneys spent in relation to the success achieved was unreasonable, and that an award of $47,254.13 was "consistent with the objectives of Congress." *Id.* 1991 WL 158963 at *5, 1991 U.S. Dist. LEXIS 11064 at *13.

■ Defendant contends that the court should have reduced the amount significantly more than it did because the fee award is not proportionate to the damage award the plaintiff received. It is true that an attorneys' fee award 47 times as great as the damage award may at first blush seem somewhat excessive. We have repeatedly held, however, that an attorneys' fee award need not be proportionate to the damage award. *See, e.g., Ustrak v. Fairman,* 851 F.2d 983, 989 (7th Cir.1988) (upholding fee award 21 times as great as damage award); *Wallace v. Mulholland,* 957 F.2d 333, 339 (7th Cir.1992); *Eddleman v. Switchcraft, Inc.,* 927 F.2d 316, 318 (7th Cir.1991); *Grosvenor v. Brienen,* 801 F.2d 944, 946–47 (7th Cir.1986). This is so

·because the amount of an award, taken alone, does not represent the full value achieved by litigation vindicating one's civil rights. *Grosvenor*, 801 F.2d at 946. As this court has noted,

> [a] judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations.

*Ustrak*, 851 F.2d at 989. Indeed, if a citizen is impotent to enforce his constitutional or statutory rights because of inability to obtain legal ·assistance given the limited prospect of monetary relief, "his day in court is denied him; the congressional [or constitutional] policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." *City of Riverside v. Rivera*, 477 U.S. 561, 575, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (quoting 122 Cong. Rec. 33,313 (1976) (remarks of Sen. Tunney)). Here, the plaintiff brought a claim of significant police abuse. And although it was successful on only one claim and received only a negligible damage award, the jury did award the plaintiff punitive damages against one officer on the excessive force claim. As the district court noted, this reflects "both the value of the victory in finding a violation of constitutional rights and the deterrence value" of the suit. *Estate of Borst v. O'Brien*, No. 88–C8364, 1991 WL 158963, at *5, 1991 U.S. Dist. LEXIS 11064, at *12–13 (N.D.Ill. Aug. 8, 1991).

Based on our review of the record, we conclude that the district court correctly applied the *Hensley* factors and did not abuse its discretion in making an attorneys' fees award of $47,254.13.

### III.

■ Defendant also appeals the award of costs. In particular, defendant argues that $2,062.26 for exemplification and copying of papers should not have been awarded since these tasks were performed

solely for the plaintiff's private benefit, rather than in connection with the preparation· of evidence. ·In addition, defendant contends that the award of $407.70 for traveling expenses incident to taking a deposition is not recoverable.

■ The award of costs "is the type of discretionary ruling to which appellate courts should give 'virtually complete' deference." *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1244 (7th Cir.1985). The award of copying costs, moreover, is certainly not novel in this Circuit. *See, e.g., SCA Servs., Inc. v. Lucky Stores*, 599 F.2d 178 (7th Cir.1979); *Sarkes Tarzian, Inc. v. Philco Corp.*, 351 F.2d 557 (7th Cir.1965). The costs of travel to take a deposition, on the other hand, should not be awarded. *Wahl v. Carrier Mfg. Co.*, 511 F.2d 209 (7th Cir.1975); *accord* 6 James W. Moore et al., *Moore's Federal Practice* ¶ 54.77[4] (2d ed.1992). Thus, the award of costs should be reduced ·by $407.70.

### IV.

Because the district court's award of attorneys' fees and costs was not unreasonable, costs are reduced by $407.70 and the judgment ·as thus modified is

AFFIRMED.