**Jason Scott GREGORY, Plaintiff,**

v.

**Sergeant Randy WEIGLER, Patrolman Stewart Gray, and Patrolman Brian Osmulski, Defendants.**

No. 93–3134.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 23, 1995.

Michael Metnick, Frederick J. Schlosser, Springfield, IL, for plaintiff.

Frederick P. Velde, Patrick J. Londrigan, Springfield, IL, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Attorneys' fees.

Another "cottage industry."

Based on our analysis, the Court awards Plaintiff $42,319.50 in attorneys' fees and $1,769.54 for costs incurred.

## BACKGROUND

On June 20, 1991, Jason Scott Gregory and five of his friends were inside a friend's apartment located at 226 Westminster Street, Jacksonville, Illinois. Gregory and his friends gathered to celebrate his safe return from military service in Operation Desert Storm. At approximately 4:00 a.m., perhaps because Gregory and his friends were becoming too boisterous, police officers Lieutenant Neil Snelling, Sergeant Randy Weigler, Patrolman Brian Coultas, Patrolman Kyle DeFrates, Patrolman Stewart Gray, Patrolman Charles Pritchett, and Patrolman Brian Osmulski entered the apart-

ment. Thereafter, the police officers escorted Gregory and his friends outside where they were subsequently handcuffed and transported to the Jacksonville Police Station.

Once at the police station, Gregory and his friends were guided to the "booking" room. There, after refusing to take a breathalyzer test, Sergeant Weigler commenced to escort Gregory to another area of the station. In the course of the escort, an altercation ensued. Gregory alleged that Patrolman Osmulski grabbed him by his throat and pinned him against the wall. Further, he alleged that Sergeant Weigler, Patrolman DeFrates, and Patrolman Osmulski, without any provocation, assaulted and beat him. As the altercation progressed, Gregory claimed Patrolman Coultas, Patrolman Gray, and Patrolman Pritchett observed the assault but failed to intervene. After the altercation, Lieutenant Snelling summoned paramedics who suggested that Gregory obtain treatment at a local hospital. As a result of the altercation, Gregory allegedly suffered abrasions, contusions, and lacerations, some of which permanently scarred his face.

Gregory was subsequently charged with resisting arrest, consumption of alcohol by a minor, and obstruction of justice. On December 4, 1991, those charges were dismissed.

On June 7, 1993, Plaintiff Gregory filed a lawsuit for excessive force and related claims pursuant to 42 U.S.C. § 1983 against the City of Jacksonville, Lieutenant Snelling, Sergeant Weigler, Patrolman Coultas, Patrolman DeFrates, Patrolman Gray, Patrolman Pritchett, and Patrolman Osmulski. The case proceeded to trial by jury in August of 1994. On August 11, 1994, we entered a directed verdict dismissing the City of Jack-

sonville and Lieutenant Snelling. Additionally, by oral motion, Plaintiff dismissed Patrolman Coultas and Patrolman Pritchett with prejudice. On August 16, 1994, the jury returned a verdict in favor of Patrolman DeFrates and against Sergeant Weigler, Patrolman Gray, and Patrolman Osmulski. The jury awarded the Plaintiff $3,000.00 in compensatory damages and $12,750.00 in punitive damages ($4,250.00 against each of the three liable Defendants).

## DISCUSSION AND ANALYSIS

■ To be eligible for attorney's fees under § 1988, a plaintiff need only be a prevailing party. *Estate of Borst v. O'Brien,* 979 F.2d 511, 515 (7th Cir.1992). In the underlying case, Plaintiff was awarded a total judgment of $15,750.00 ($3,000.00 in compensatory damages and $12,750.00 in punitive damages). Thus, clearly Plaintiff is a prevailing party and entitled to an award of attorneys' fees, Defendants do not argue otherwise.

■ The starting point for determining the amount of attorneys' fees is the lodestar. *Estate of Borst,* 979 F.2d at 515. The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Id.* "The burden is on the party seeking the award to substantiate the hours worked and the rate claimed." *Id.* Once the party seeking the award satisfies this burden, we may "then review the fee request, and may increase or decrease it in light of the factors adopted by Congress in enacting § 1988, now known as the *Hensley* [*v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)] factors." [1] *Id.* Since the "lodestar calculation is presumed to be a reasonable fee award," *Eddleman v. Switchcraft, Inc.,* 927

---

1. The *Hensley* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases. *Estate of Borst,* 979 F.2d at 515 n. 2.

However, it is important to note that many of the *Hensley* factors may have been subsumed in the initial calculation of the lodestar, *i.e.,* the hours reasonably expended by the reasonable hourly rate. *Lynch v. City of Milwaukee,* 747 F.2d 423, 426 n. 2 (7th Cir.1984). A court must be aware of this in order to avoid considering the *Hensley* factors twice.

F.2d 316, 318 (7th Cir.1991), an·increase or decrease of the lodestar "may not be done arbitrarily, however, and a 'concise but clear explanation' should accompany any modification of the submitted lodestar." *Estate of Borst,* 979 F.2d at 515–16 (citations omitted). Regarding an award for costs incurred, such an award is within the discretion of the district court. *Id.* at 517.

## I

Plaintiff requests attorneys' fees in the amount of $42,319.50,[2] and also seeks compensation for costs incurred in the amount of $2,499.54, totaling $44,819.04. In support of Plaintiff's request, he submits a memorandum of law, an itemized statement of legal services performed and costs incurred, and the affidavits of attorneys Michael B. Metnick, Frederick J. Schlosser, George F. Taseff, Howard W. Feldman, Charles J. Gramlich, and D. Peter Wise, and paralegals William R. Clutter and Claire Allen.[3] Defendants dispute the reasonableness of several of the component fees comprising the fee request and the costs incurred. Defendants' arguments will be addressed in turn.

### A. Hourly Rates of Attorneys Schlosser and Metnick

Defendants argue that Schlosser's fee of $110.00 per hour and Metnick's fee of $150.00 per hour are excessive.[4] They argue that the prevailing market rate in Sangamon County for the type and quality of services furnished by Schlosser and Metnick ranges from $65.00 to $100.00 an hour. Unfortunately, Defendants' argument apparently focuses on what

they believe to be the *average* market rate in the Sangamon County area and not on the rate charged by the two attorneys at issue.

As recently noted by the Seventh Circuit, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Continental Illinois Securities Litigation,* 962 F.2d 566, 568 (7th Cir.1992); accord, *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993) ("When the lawyers sell their time in the market, the market provides the starting point: *the lawyer's hourly rate.* * * * Only an assumption that all lawyers are identical could support the *averaging approach,* under which all lawyers in a division of the court receive the same hourly fee.") (emphasis added).

Here, Metnick submits an affidavit stating that his "normal" billing rate is $150.00 an hour. Schlosser's affidavit omits his "normal" billing rate, but Metnick, as senior partner, verifies Schlosser's rate of $110.00 per hour. Additionally, Plaintiff submits the affidavits of unaffiliated attorneys Taseff, Feldman, and Gramlich which state that hourly rates of $110.00 and $150.00 are reasonable in the Central District of Illinois for Civil Rights litigation. Thus, based on recent Seventh Circuit precedent, since the hourly rates of $150.00 and $110.00 are the respective rates charged to the market for the services of the attorneys at issue, Plaintiff's attorneys are presumptively entitled to be compensated at this rate.[5] *Gusman,* 986 F.2d at 1149–50·

---

**2.** The Court notes that the itemized statement of legal services performed and costs incurred submitted by Plaintiff contains a typographical error. On page 11 of the itemized statement, attorney Frederick J. Schlosser lists his hourly rate at $109.60. Based on that hourly rate, the total fee allocated to Schlosser through August 29, 1994, is $20,889.00. However, Schlosser's fee is $110.00 an hour, thus, the fee allocated for his work through August 29, 1994, should total $20,-966.00.

**3.** Attorneys Taseff, Feldman, and Gramlich are not affiliated with the law firm that represented Plaintiff.

**4.** Defendants do not dispute the reasonableness of the rates charged by the other attorneys that

participated in the course of litigating the underlying case.

**5.** We would like to note that there appears to be conflicting precedent in the Seventh Circuit on the issue of calculating an attorney's reasonable hourly rate. As discussed above, *Gusman* and *In re Continental Illinois Securities Litigation* stand for the proposition that an attorney's *actual* hourly rate is the starting point. However, in *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 519 (7th Cir.1993), a case decided approximately 9 months after *Gusman,* the Seventh Circuit states the "reasonable hourly rate used in calculating the lodestar *must* be based on the market rate for the attorney's work." (emphasis added). The *McNabola* Court then precedes to define "market rate" as "the rate that lawyers of

(Attorneys are "presumptively entitled" to their respective rates, "rather than to some rate devised by the court.").

■ However, although attorneys are presumptively entitled to their respective hourly rates, we may depart from this rate for some reason "other than the ability to identify a different average rate in the community." *Gusman*, 986 F.2d at 1151. Defendants offer several arguments supporting their contention that the Court should lower Schlosser and Metnick's respective hourly rates, none of which we find persuasive.

■ First, Defendants' argue that Schlosser and Metnick's lack of experience in the federal civil rights area supports a lowering of their hourly rates. Apparently, Defendants suggest that the lack of experience resulted in duplicative and unreasonable charges. Defendants fail to point to any specific charge, they simply state that "had counsel familiar with federal civil rights been retained by Plaintiff, pretrial and trial proceedings would have progressed more smoothly." However, as noted in Schlosser's affidavit, Schlosser states that he conducted considerable general research regarding federal civil rights and excessive force claims and did not charge for this "general" time. Furthermore, since Defendants fail to cite to any specific charge or instance, the Court cannot determine if there actually was excessive or wasteful time, however, based on our recollection, we do not recall any such "wasteful" time. Thus, Defendants' argument is without merit.

■ Second, Defendants argue that Plaintiff's limited success in the underlying case supports a reduction in the fee award. Defendants argue that Plaintiff failed to succeed in his claim against the City of Jacksonville, and several officers of the Jacksonville Police Department and the damages awarded to him were minimal.

As recently noted by the Seventh Circuit, "[n]either the Supreme Court nor this Court has required any correspondence between the degree to which a plaintiff has financially prevailed and the attorney fees awarded to him." *Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir.1992); *accord, Estate of Borst*, 979 F.2d at 516–17 ("We have repeatedly held [ ] that an attorneys' fee award need not be proportionate to the damage award.") Here, Plaintiff received $3,000.00 in compensatory damages and a total of $12,750.00 in punitive damages against three separate Defendants, *i.e.*, Plaintiff won his case. True, Plaintiff did not succeed on his claims against the City of Jacksonville and four police officers, however, the unsuccessful claims were all related to the claims on which he did prevail, thus, this is a case in which Plaintiff's "claims for relief ... involve a common core of facts or [are] based on related legal theories." *Wallace*, 957 F.2d at 339. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Thus, we do not deem the fact that Plaintiff was only partially successful and equally unsuccessful—against several Defendants as militating in favor of lowering the fee award. *See Estate of Borst*, 979 F.2d at 517 ("[T]he amount of an award, taken alone, does not represent the full value achieved by litigation vindicating one's civil rights.").

■ Third, Defendants argue that since the issues involved in the underlying case were novel and not complex, the fee award should be reduced accordingly. "While the fact that a case is straight-forward and raises no novel issues is not a ground for *automatically* reducing a fee award, the simplicity of the factual and legal issues involved is relevant to determining whether the hours expended by the plaintiff's attorney were reasonable." *Spanish Action Comm. of Chicago*

similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* The opinion further discusses the "prevailing market rate" in the community at issue. The *McNabola* Court's reference to "lawyers of similar ability and experience," "prevailing market rates," and "community" standards apparently suggests that a court should defer to such factors to determine an

attorney's reasonable hourly rate, *i.e.*, an averaging approach. If so, *McNabola* is directly contradicting the reasoning employed in *Gusman*. Furthermore, the *McNabola* Court, in the context of their opinion discussing hourly rates, fails to cite *Gusman* or *In re Continental Illinois Securities Litigation*. Consequently, district courts are left to ponder.

*v. City of Chicago,* 811 F.2d 1129, 1136 (7th Cir.1987) (emphasis added).

Simply stated, we do not believe the hours expended by Plaintiff's attorneys were unreasonable for this type of a case. In the course of litigating the underlying case and the preparation of the fee award, Plaintiff's legal team expended a total of 343.45 hours. Defendants fail to cite to any specific motion, research, conference, or any other form of trial preparation that Plaintiff allegedly expended an unreasonable number of hours, nor, after considering a concise scan of the itemized statement, does such an instance become apparent to us. Although the issues involved may have arguably been straightforward (by making this statement, we are not concluding that they were), we cannot say the hours expended by Plaintiff's legal team were unreasonable or excessive.

■ Finally, Defendants raise the issue of the existence of a contingency fee contract. The existence of a contingency contract may be probative of a fee's reasonableness, however, the contract "is but a single factor" for the court to consider "and not determinative." *Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 109 S.Ct. 939, 943–44, 103 L.Ed.2d 67 (1989); *accord, Lenard v. Argento,* 808 F.2d 1242, 1245 (7th Cir.1987) ("[T]he existence of such a contract and the relationship between the fee award and the damages award are relevant to the reasonableness of the former."); *Hutchison v. Wells,* 719 F.Supp. 1435, 1147–48 (S.D.Ind.1989).

In our order of January 9, 1995, we directed Plaintiff to reply to Defendants' response raising the issue of a contingency fee contract. Metnick responded by affidavit stating that no such contract existed here. Further, Metnick's affidavit provides that Plaintiff's agreed fee "would be the entire amount, if any, awarded by the court pursuant to 42 U.S.C. § 1988." Thus, since a contingency fee contract was not in existence here, Defendants' argument is moot.

Therefore, the Court concludes the respective rates submitted by Schlosser and Metnick (respectively, $110.00 and $150.00 per hour) are the reasonable hourly rates to utilize for lodestar purposes. In summary, we *do not deem these rates to be excessive or unreasonable,* thus, we decline to depart from the submitted rates, *i.e.,* the attorneys' "normal" billing rates which they are presumptively entitled to receive.

The following discussion concerns several other arguments offered by Defendants regarding their reasons for excluding certain charges from the lodestar calculation and/or additional arguments for lowering the hourly rates used for computing the lodestar.[6]

## B. Attorney Preparation and Attendance

■ Two attorneys—Frederick J. Schlosser and Michael B. Metnick—were present on Plaintiff's behalf during the trial phase of this matter. However, only Metnick actually participated at trial. Schlosser was present at counsel table as "second chair," but did not actually participate in the trial.[7] Defendants argue the lodestar should be decreased to the extent it includes the fees allocated to Schlosser's time for preparation and attendance of trial since, according to Defendants, Schlosser's attendance was duplicative and unnecessary.

We disagree. The Seventh Circuit has not provided much guidance on this issue other than stating, "we have refused to lay down a flat rule of one lawyer per case" and "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time." *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1160 (7th Cir.1989). However, we do not believe Schlosser's attendance of the trial was duplicative or unreasonable.

As evidenced by the itemized statement of legal services performed, Schlosser was responsible for virtually all of the pretrial matters in this case. Indeed, among other

**6.** Since Defendants' argument is not well organized and at times, confusing to follow, it was difficult for the Court to determine if the argument at issue was directed at lowering the hourly rate or excluding a specific charge.

**7.** By "actually participate," we recognize that Schlosser did not conduct any direct or cross-examinations, make the closing argument or opening statement, participate in the jury instruction conference, or voice an objection.

things, Schlosser drafted/prepared the complaint and the amended complaint, the response to Defendants' motion to dismiss, the response to Defendants' summary judgment motion, the pretrial memorandum, the jury instructions, the responses to Defendants' motions *in limine,* and the trial brief. Further, as also evidenced by the itemized statement, Schlosser was very active in virtually every aspect of the discovery phase in this matter.

Obviously, Schlosser was an integral part of Plaintiff's legal team. Although Schlosser did not vocally participate at trial, it appeared to the Court that his attendance was necessary to familiarize, instruct, and generally assist Metnick regarding pertinent issues at trial. Thus, to characterize Schlosser's preparation for and attendance of the trial as duplicative and unnecessary is simply inaccurate. *See Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir.1988) ("The use of two (or more) lawyers ... may well reduce the total expenditures by taking advantage of the division of labor. * * * The scholar did the research, the litigator the litigating."); *Hedges v. Wauconda Community Unit Sch. Dist. No. 118,* No. 90–C–6604, 1993 WL 313527, U.S.Dist. LEXIS 11463 (N.D.Ill. Aug. 17, 1993) ("The Court is well aware that it is standard practice for more than one attorney to attend a trial."); *Ralstin v. Northern Indiana Pub. Serv. Co.,* No. S88–544, 1990 WL 258770, U.S.Dist. LEXIS 18157 (N.D.Ind. Sept. 20, 1990) ("The presence of the second attorney for the plaintiff was not excessive or unnecessarily duplicative in this case."); *Egert v. Connecticut General Life Ins. Co.,* 768 F.Supp. 216, 220 n. 4 (N.D.Ill. 1991) ("Cases are often argued by and prepared by far more than two attorneys. It was not unreasonable for both attorneys to prepare for and attend trial."); *Littlefield v. Mack,* 750 F.Supp. 1395, 1405 (N.D.Ill.1990) ("As to the presence of more than one plaintiff's attorney at certain depositions and at trial, this is standard practice these days.").

## C. Attorney D. Peter Wise

█ Plaintiff requests attorney fees for D. Peter Wise at the rate of $125.00 per hour for 1.20 hours of work, totalling $150.00. Defendants argue that since Wise did not appear in court and his only participation concerns interoffice conferences with attorneys Schlosser and Metnick, and an individual named Gary Brown, his fees should be stricken form the lodestar.[8] Defendants' argument consists of one sentence and it is not supported by any authority. Defendants do not dispute the reasonableness of Wise's $125.00 per hour rate.

Of course, Plaintiff may choose to employ more than one attorney, but Defendants will not be required to compensate Plaintiff for duplicative and excessive efforts. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Jardien,* 888 F.2d at 1160. At issue here are two conferences. The first conference on June 16, 1994, involved Wise, Metnick, and Schlosser and lasted approximately one hour. The second conference on July 12, 1994, involved Wise and Brown and lasted approximately twelve minutes.

Regarding the first conference, the Court does not view this as duplicative or excessive. Wise is a partner in the firm that represented Plaintiff, and a one hour conference between Wise and the two attorneys primarily assigned to the case—Schlosser and Metnick—is not unreasonable. Nor does the Court view a twelve minute conference as unreasonable or excessive. Thus, Plaintiff is entitled to recover these costs.

## D. "RDF" and "KS"

Defendants object to fees allocated to two attorneys identified as "RDF" and "KS." In response to our order requesting clarification of several issues, Plaintiff concedes that the amounts allocated to "RDF" and "KS" should not have been included in the calculation of his original lodestar. Thus, Plaintiff submitted an updated lodestar which does not in-

---

**8.** Defendants also argue that since D. Peter Wise did not submit an affidavit verifying his fees, his fees should be stricken. However, after the date Defendants filed their response to Plaintiff's mo- tion for attorneys' fees, Wise submitted an affidavit verifying the accuracy of the fees allocated to his time, thus, this argument is moot.

clude those amounts. Therefore, Defendants' objection is moot.

### E. Paralegal Fees

■ Defendants object to Plaintiff's fee of $35.00 to $55.00 an hour for paralegal services. Defendants argue that Plaintiff has failed to attach affidavits stating that $35.00 to $55.00 an hour are reasonable paralegal fees in the Central District of Illinois.[9] Once again, Defendants' argument consists of one sentence and is not supported by any authority.

■ It is undisputed that the "reasonable attorney's fee" provided for by statute should compensate for the work of paralegals as well as attorneys. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989); *Spanish Action Comm. of Chicago v. City of Chicago,* 811 F.2d 1129, 1138 (7th Cir.1987). In the course of litigating this matter, Plaintiff employed the services of three paralegals: William R. Clutter (.50 hours at $50.00/hr. = $25.00); Claire Allen (10.30 hours at $55.00/hr. = $566.50); and Phillip Wise (.10 hours at $35.00/hr. = $3.50).

■ Identical to the issue of determining an attorney's compensation based on his hourly rate (*see* part "A" above), the issue is *not* what is reasonable in the Central District of Illinois, rather, the issue is compensating Plaintiff for the "normal" fees charged to the market for the services of the paralegals at issue. *In Matter of Continental Illinois Securities Litigation,* 962 F.2d at 569 ("The judge committed the same error when he refused to allow paralegal services to be compensated at market rates * * * But his

mistake went deeper. He was again trying to determine the value of a service that the market has set its *own* value on.") (emphasis added).

Here, the affidavits submitted by two of the paralegals verify the number of hours worked on the case, however, they omit verification of the rates charged for their services. We do not deem this fatal for Plaintiff. Metnick's affidavit lists the number of hours expended and the rates charged by each attorney and paralegal involved in this matter. At the very least, Metnick's affidavit implicitly verifies the rates charged (along with the hours worked) for the services of each attorney and paralegal employed by his firm. Furthermore, by placing their signatures on the motion for attorneys' fees and the accompanying memoranda, Metnick and/or Schlosser verify the accuracy of the information contained therein.

Accordingly, Plaintiff is also presumptively entitled to be compensated for the paralegal fees at the rate submitted, *i.e.,* the rate the law firm normally charges the market for such services. *See Gusman,* 986 F.2d at 1150. Since we do not deem the rates charged or the number of hours utilized for the paralegals' services as unreasonable or excessive, Plaintiff will be compensated for the amount requested for such services—$595.00.

### F. Interoffice Communications

■ Listed on Plaintiff's itemized statement of fees are several charges for interoffice communications.[10] Defendants fail to dispute the reasonableness of any specific interoffice communication, rather, they simply group such communications under their

---

**9.** Defendants also objected to Plaintiff's failure to provide the Court with affidavits from the paralegals regarding their acknowledgment of the number of hours they allegedly worked. However, since that time, Plaintiff has submitted affidavits from paralegals William R. Clutter and Claire Allen verifying the accuracy of the number of hours each worked. Thus, Defendants' objection regarding that issue is moot. Paralegal Phillip Wise is no longer employed with the firm and did not submit an affidavit.

**10.** Defendants list the interoffice communications at issue as occurring on the following dates: May 3, 1993; June 28, 1993; July 23, 1993;

September 26, 1993; November 22, 1993; December 9, 1993; April 19, 1994; June 9, 1994; June 13, 1994; June 16, 1994; July 12, 1994; July 26, 1994; August 2, 1994; August 3, 1994; August 4, 1994; August 9, 1994; August 15, 1994; and August 17, 1994.

However, two of the entries were previously discussed in part "C" of this order regarding attorney D. Peter Wise (the June 16 and July 12, 1994 entries). Further, based on our analysis of the itemized statement, there does not appear to be an interoffice communication on August 15, 1994.

blanket argument that "the number of hours claimed by all of the Plaintiff's counsel are duplicative and unreasonable." Defendants cite no authority in support of their argument.

The total fees charged for the listed interoffice communications total $1,613.50 (excluding the two entries we discussed in part "C" and the August 15, 1994 entry, *see* footnote 9). These communications include, among other things, memoranda to the file and to other attorneys regarding pertinent issues in the case and discussions regarding settlement offers, various aspects of the case, various motions filed, trial preparation, post verdict issues, and other pertinent issues. Such communications are standard practice and are billed to a client in the normal course of business. Surely, Defendants' counsel is not suggesting that they do not engage in similar communications and/or bill such costs to their respective clients. The fees allocated to the interoffice communications are not excessive, duplicative, or unreasonable, thus, they are compensable.[11]

## G. Post-Trial Fees

Defendants offer a blanket objection to all fees occurring between August 29 and December 6, 1994. Defendants fail to cite to a specific item and, as usual, they do not cite any authority supporting their objection. The fees incurred between August 29 and December 6, 1994, total $1,753.50 and primarily concern the preparation of the memorandum establishing Plaintiff's entitlement to an award of attorneys' fees and related issues.

Apparently, Defendants argue that Plaintiff is not entitled to compensation for attorney fees occurring after judgment on the underlying case. However, a prevailing plaintiff is indisputably entitled to fee awards for time spent litigating and preparing their claim for fees. *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir.1980).[12]

## II

Plaintiff is also requesting compensation for costs incurred in the amount of $2,499.54. As noted above, the awarding of costs is within the discretion of the district court. *Estate of Borst*, 979 F.2d at 517; *SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 180 (7th Cir.1979). The only costs Defendants dispute are the transportation expenses of $730.00 for witness Tina Brockhouse and Westlaw research charges of $430.68.

Regarding the transportation expenses of witness Brockhouse, Plaintiff has not complied with the provisions of 28 U.S.C. § 1821(c)(1). *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987) ("We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witnesses as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."); *Knop v. Johnson*, 712 F.Supp. 571, 589 (W.D.Mich. 1989); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, No. 84–C–6113, 1992 WL 199826, U.S.Dist. LEXIS 11882 (N.D.Ill. Aug. 6, 1992). In order to be compensated for Brockhouse's transportation expenses, Plaintiff must submit a "receipt or other evidence of actual cost" and must also provide evidence that the rate charged for her airfare was "the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1).

Since Plaintiff has not provided the Court with such evidence, we must deny this por-

---

11. Under their blanket objection that "the number of hours claimed by all of the Plaintiff's counsel are duplicative and unreasonable," Defendants also argue that Plaintiff billed twice for reviewing an order of this Court and for reviewing discovery material. However, there is no evidence of this. Surely, an order or document does not have to be reviewed in its entirety at one sitting. Defendants' argument is without merit.

12. In December 1994, we ordered Plaintiff to clarify several issues in his memorandum accompanying his motion for attorneys' fees and costs. Since the lack of clarification was Plaintiff's error, we will not allow him to collect fees allocated to his response to that order. However, it does not appear to us that Plaintiff included such costs in his itemized statement of fees, thus, there is nothing to subtract from the fee award regarding that response.

tion of his request.[13] The amount Plaintiff seeks for costs incurred is reduced by $730.00.

**■** Regarding the $430.68 charged for Westlaw research, we conclude such costs were reasonably incurred and are indisputably recoverable by a prevailing party. Indeed, computerized research costs are the type of costs normally billed to a paying client. Defendants' only argument to the contrary is that "Westlaw research charges are not appropriate under the guidelines." Defendants cite no authority supporting that argument. Their argument is completely meritless and, since we conclude the costs were reasonably incurred, Plaintiff is entitled to recover the amount of $430.68 for such costs. *In re Continental Illinois Securities Litigation,* 962 F.2d at 570 ("The judge refused to allow the lawyers to bill *any* of their out-of-pocket expenses of using a computerized legal research service (LEXIS). * * * This was another clear error."); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 976 (7th Cir. 1991) ("Computer-assisted research fees—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable."); *BASF Corp. v. Old World Trading Co.,* 839 F.Supp. 528, 533–34 (N.D.Ill.1993) ("The Court concedes that legal research costs incurred using a computerized research system such as LEXIS are recoverable.").

Thus, since Plaintiff failed to comply with 28 U.S.C. § 1821, his total costs incurred of $2,499.54 will be reduced by $730.00 (the cost of witness Brockhouse's travel). Plaintiff is entitled to recover $1,769.54 for costs incurred.

**13.** On September 19, 1994, Plaintiff filed a motion for an evidentiary hearing regarding his pending motion for attorneys' fees. In response, Defendants raised the issue of witness Brockhouse's travel costs for the first time. Plaintiff never sought leave of Court to respond to that issue. In the course of rendering our decision, we issued two orders directing Plaintiff to clarify some matters. In response to one of Plaintiff's clarifications, Defendants again raised the issue of witness Brockhouse's travel costs under

## III

Plaintiff also requests an evidentiary hearing on the issues associated with this order. However, as evidenced by our discussion above, we see no reason for an evidentiary hearing, thus, Plaintiff's motion for an evidentiary hearing is denied.

### *CONCLUSION*

Based on our discussion, Plaintiff is entitled to attorneys' fees in the amount of $42,319.50 and $1,769.54 for costs incurred.

*Ergo,* Plaintiff's motion for attorneys' fees and cost incurred is ALLOWED to the extent such motion is consistent with this order.

Plaintiff's motion for an evidentiary hearing is DENIED.

§ 1821. Plaintiff again chose not to respond to their argument. Since enough time has already been expended on Plaintiff's motion, we decline to take additional time to order Plaintiff to provide the Court with the documentation required under § 1821. Plaintiff was aware of this issue and had several opportunities to provide the Court with the necessary documentation. Thus, Plaintiff is not entitled to recover the cost of witness Brockhouse's transportation.